UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND L. BEDFORD
(Petitioner)

v. C.A.No.04-527L

A.T. WALL II, Director of the
R.I. Department of Corrections, et al.
(Respondents)

**PETITIONER'S OBJECTION AND REBUTTAL TO RESPONDENTS MOTION TO DISSMISS**

Now comes Petitioner Normand L. Bedford, in the above entitled matter and hereby, "Objects to the Respondent's (State's) Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus" whereby, it is prayed that the Respondents Motion to Dismiss and their supporting Memorandum be denied.

Petitioner submits the attached "Memorandum of Rebuttal" in support of the instant objection, whereby, it is prayed that the Respondents (State's) Motion to Dismiss be denied.

Respectfully submitted

Normand L. Bedford

Normand L. Bedford (Pro se)
P.O. Box 8273
Cranston, RI 02920

Normand Bedford
June 6, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND L. BEDFORD
(Petitioner)

v. C.A.No.04-527L

A.T. WALL II, Director of the
R.I. Department of Corrections, et al.
(Respondents)

**PETITIONER"S REBUTTAL TO RESPONDENTS**
**MOTION TO DISSMISS**
**PETITION FOR WRIT OF HABEAS CORPUS**

1. Now comes Petitioner, Normand L. Bedford, Pro se, hereby, submits the instant Memorandum in Rebbutal to the Respondents (State's) Motion to Dismiss, whereby, Petitioner respectfully requests that the Respondents Motion to Dismiss be denied for failure to state a claim upon which relief may be granted.

**I. Background:**

2. The Petitioner is an inmate serving an "illegal and void judgment" of conviction and sentence at the Rhode Island Adult Correctional Institutions (ACI).

3. The Department of Corrections, Adult Correctional Institutions, utilizes an inmate grievance procedure which permits inmates to lodge complaints about various aspects of inmate life and seek resolutions to those complaints. Specifically, the policy which delineates the procedure for the grievance system (copy attached) states that "inmates may be <u>limited</u>" from filing grievances and subject to discipline if it is determined that they have abused the grievance procedure. Id. page 4 of 12, 7. <u>Abuse of the inmate Grievance Procedure</u> subsections (a-d); 1(a-g). See also, Respondents (State's) Memorandum at p.1, attached herewith.

4. The Respondents assert that "Plaintiff filed approximately 23% of all grievances filed in 2004." Id. p. 2 of enclosed Memorandum. The State further asserts that "The subject matter of Plaintiff's grievances were deemed frivolous and '<u>repetitive</u>' by institutional staff." Id. p. 2 of Memorandum. Notably, Petitioner's "Booking Report" #8210, dated 11-22-04, enclosed herein, states in pertinent part, that, "Inmate filed [9] frivolous grievances in 2004. Id. Line 1 of Booking Report. Incidently, Petitioner was specifically, booked and segregated for 45 days collectively, for "filing alleged 'frivolous' and 'repetitive' grievances. The State uses the term "repetitive" twice (2) on page 2 of Memorandum. The Petitioner asserts that the R.I. Department of Corrections Grievance Policy 13.10, defines "Abuse of the Inmate Grievance Procedure" using several different criteria. In subsection (a) on page 4 of 12

of that policy, it states in part, that "Punishment or disciplinary actions will not result from an inmate's submitting a complaint or grievance unless the inmate demonstrates a pattern of abuse of this process by submitting clearly 'frivolous, repetitious, or knowingly false documents.'" In subsection (b) of the same policy, it states that, "An inmate who files five (5) or more grievances in a week or more than twenty (20) in any consecutive 180-day period may be determined to be abusing the Inmate Grievance Procedure." In subsection (c) of the policy, it states that, "An inmate may be limited to not more than ten (10) active grievances at one time, not including any emergency grievances."

5. Petitioner avers that since all he filed in the entire year of 2004 was nine (9) grievances, and all with different subject matter, it can be said that "this is a far cry from abuse of the grievance process." Additionally, the State defined the alleged abuse by using the term "repetitious." Notably, the term repetitive is described in the [DOC] policy on page 1 of 12 whereby, it states in pertinent part that, Abuse- "The filing of repetitive grievances addressing the same issue where sufficient time for response has not elapsed or where a valid response has been provided; and the filing of an excessive number of grievances. Again, nine (9) grievances in a one (1) year period, is a sharp contrast from twenty (20) in a 180-day period. Id. at page 1 of 12 of policy **Procedures** III A. **Definitions**, 1 **Abuse**.

6. Petitioner also asserts that "nowhere in the policy does it provide authority" to "Remove inmate from the grievance procedure for a period of six (6) months. However, to the contrary, it only provides authority to limit the the number of grievances filed at one time, and in a six (6) month time frame. Therefore, it was an abuse of discretion for Petitioner to be both "Removed from the grievance procedure for six (6) months" and subsequently punished with 45-days punitive disciplinary confinement. See attached R.I. DOC Memo of Removal dated November 22, 2004. The State contends that "Grievances are answered in writing, and therefore can monopolize a significant portion of officers' time, taking them away from other correctional functions." Id. p.2 of Memorandum. Petitioner argues that there is only one officer assigned as "Grievance Coordinator" for the purpose of handling grievances within the institution, thus the State's assertion is misleading. The State is also misleading the Court in it's Memorandum on p.2, when it states that, "As such, Plaintiff was verbally notified on 11-22-04 that he may not use the grievance system for a period of six months, and that formal notification would follow in writing. Petitioner clearly argued in his appeal of his unlawful disciplinary sanctions that "he was never verbally, nor in writing, informed he was removed from the grievance process, until after he filed his grievance on Thanksgiving Day, November 25, 2004." "Appellant did not get the notice in the mail until November 27, 2004 on Sat-

urday." Notably, Petitioner was not called to shift command, booked, and then escorted to segregation, until November 29, 2004. Had the Petitioner really disobeyed a direct order, as the State claims, by filing grievances against that purported order, then he would have been booked and segregated long before the 29th of November. Petitioner's disciplinary appeal dated December 1, 2004 sets forth the real truth of the matter. See Exhibit "B" of Petitioner's February 21, 2005 filed "Motion for Executive Order" that was filed with this Court in this case, #04-527L. Note: The cover-page of the above referenced exhibit, is dated January 12, 2004, which is an "Affidavit of Complaint" demonstrating "mail tampering" and "obstruction of justice."

7. Petitioner asserts that the State repeatedly makes false claims in their Memorandum, whereby, at p.2, it states in part, that "Undaunted, Plaintiff filed a grievance later that same day." Speaking of the date of 11-22-04, which was merely the date of Petitioner's 11-22-04 grievance alleging violations of the Federal Trade Commissions Act Title 15 §1452; and §1453. See Exhibit "G" of Petitioner's February 21, 2005, filed "Motion for Executive Order" noted above. Unsatisfied with the first false claim, the State reinforces the erroneous contentions that "The very next day, 11-23-04, Plaintiff filed a grievance pertaining to the denial of an "indigent store order." Notably, that date also reflects the date it was prepared, and not the actual date of filing, which was

Thanksgiving Day, November 25, 2004, when Petitioner was ordered to report to the "Grievance Coordinator's Office," namely, Lt. Patrick Flynn, who is clearly a "false witness." Also, the grievance referenced 11-23-04, was actually an "appeal to a Level-2," whereby, Petitioner's due process rights afford him the right to that appeal process. Petitioner avers that the two (2) bookings and subsequent "disciplinary confinement" previously called "segregation," were the result of the two (2) being collectively, drafted together, and subsequently heard and decided together, sentencing Petitioner to consecutive terms of "disciplinary confinement" one being twenty (20), days, and the other twenty-five (25), days to serve in lock-up. Therefore, pursuant to the **Sandin v Conner**, 515 U.S. 472,485.(1995), doctrine Petitioner's right to due process was violated, because his sentence did indeed exceed 30 days in punitive confinement. Thus, when the State claims that "Plaintiff was afforded even more process than he was due, was sentenced to less than 30 days per infraction," Id. at p.4 of it's Memorandum, that claim is misleading and outright false.

8. Additionally, the State avers that "Plaintiff alleges that these actions are in furtherance of a plan by prison officials to keep him from being able to conduct legal research pertinent to his criminal appeal pending in the U.S. Court of Appeals for the First Circuit." Id. at p.3 of Memorandum. This is true, Petitioner was in fact, precluded from his litigation in the U.S. Court of

Appeals for the First Circuit, for several reasons: 1. The Petitioner was denied legal copies the entire time he spent in "disciplinary confinement" which was from 11-29-2004 thru 2-11-2005, when he was transferred to the Maximum Security Facility, and even then he was denied legal copies, because the "copy machine" was broken, as stated in Petitioner's "Motion for Executive Order" filed on February 21, 2005, with this Court. 2. Petitioner was deliberately denied his legal work, despite repeated futile attempts to obtain such. These factors alone compelled the Petitioner to file a "Motion to Stay Appeal" with the U.S. Court of Appeals for the First Circuit. Therefore, again, when the State asserts that, "Plaintiff was properly disciplined and any short-term limitation of his access to legal material was just that: short-term, and did not affect his access to the courts," Id. at p.6 of Memorandum, "they are sadly mistaken."

## II. The Standard for a 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), a court must take the allegations of the complaint as true and view them in the light most favorable to the plaintiff. **Brower v. County of Inyo**, **489 U.S. 593, 598, 109 S.Ct.1378, 103 L.Ed. 2d 628 (1989)**. Petitioner's recent submissions, filed with this Court on February 21, 2005, as collateral issues, and interlocutory evidence, corroborate the declarations, allegations and

assertions that Petitioner has been alleging for the past several years, namely "mail tampering, obstruction of justice, obstruction of correspondence, retaliation and unlawful segregation and disciplinary confinement, which constitute 'cruel and unusual punishment.'" Interestingly, the State failed to mention or rebut Petitioner's claims made in his February 21, 2005 filings of a volume of evidence, with several supporting "Affidavit's of Complaint" and Affidavit's of Truth, whereby, Petitioner's claims of relief should be granted.

2. Petitioner also filed on February 21, 2005, his "Motion for Order of Default Judgment" with it's exhibits A-C, utilizing the instant "Petition for Writ of Habeas Corpus" as a gateway for relief. Petitioner filed therewith, an associated "Affidavit of Truth" in support thereof, whereby, several forms of relief are declared. Notably, the State has not mentioned or filed any pleadings concerning the same.

## III. Plaintiff/PETITIONER'S CLAIM OF EXCESSIVE FORCE

1. The State points out that "Plaintiff also contends that he sustained minor injury from handcuffs being applied too tightly during his transport to the segregation unit, and that correctional staff "mistreat" him." "Plaintiff contends that an officer, not named as a defendant in this action, used "unreason-

able and unnecessary force" while escorting Plaintiff to segregation." Petitioner asserts that he did name the person and/or Correctional Officer, who used "unreasonable and unnecessary force." See Exhibit "B", of Petitioner's February 21, 2005 filing of a "Motion for Executive Order" within the January 12, 2005 Affidavit of Complaint filed with the R.I. Department of Corrections Director A.T. Wall II, and subsequently thereafter. Id. at p.6 of that appeal of "disciplinary confinement."

2. The State avers that "It is well-established that whenever prison officials stand accused of using excessive physical force constituting 'the unnecessary and wanton infliction of pain' violative of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in **Whitley v. Albers**, 475 U.S. 312, 320-21 (1986)" that is: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. "Many of the concerns underlying our holding in **Whitley** arise whenever guards use force to keep order." Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." Petitioner asserts that the above cited case-law-doctrine...is a sharp contrast to the circumstances surrounding his claim of "Unreasonable and excessive force" leading to the pain and suffering of the Petition-

er. Petitioner was called to "shift command" while working on his active legal case, where he was unlawfully "booked and escorted to segregation" by an officer Craig. The booking offence, though unlawful, was not considered a riotous act, or even one that could potentially arise to the level where force would otherwise be required to restore or maintain order. In addition, as stated in Petitioner's appeal of his disciplinary confinement, as Exhibit "B" of February 21, 2005 filed "Motion for Executive Order, officer Craig was alleged to have stated to Petitioner in front of segregation officer William Langlois, that "he didn't mean to place the handcuffs on to tight." This was an admission by officer Craig himself, and then followed by a nurses affirmation that "she would document the minor personal injury of Petitioner." Petitioner is indigent and does not have the funds to secure his medical file at the cost of fifteen dollars ($15.00), therefore, he did not file the corroborating evidence of that report. Even though the injury, pain and suffering incurred by the Petitioner was not serious, he still suffered through the negligence of an officer's "unreasonable and excessive force." Therefore, Petitioner has alleged a sustainable claim of "unnecessary force" and thus, the State's Motion to Dismiss should be denied.

**IV. Plaintiff's established claim of retaliation**

1. In light of the aforementioned facts, that Petitioner was unlawfully segregated, supported by the R.I. Department of Corrections own grievance policy 13.10, Id. at p.4 of 12, which states in part that, "Inmates under limitation for abuse of the inmate Grievance Procedure shall be allowed to file emergency grievances," Petitioner has established a solid claim of "retaliation, and intended through a "corrupt endeavor" to impede, delay and even stop Petitioner's access to the Courts. Additionally, as stated previously, herein, "there is a sharp contrast between the number of grievances one has to file to constitute 'abuse of the grievance procedure,' and the Petitioner's filings of nine (9) in a one year period." In fact, the State's own statement concludes, that "It is a fact that Plaintiff was ultimately booked because he filed grievances," Id. at p.6 of State's Memorandum, when in fact, Petitioner should not have been booked at all, nor suffered unlawful segregation, nor the minor personal injury he sustained, notwithstanding the "downgrade to a higher level of security."

2. In addition, Petitioner has verified claims of "mail tampering, obstruction of correspondence, denial of full and fair access to his legal work and evidence, as well as denial of full and fair access to the Courts," See Affidavit of Complaints filed in the case of C.A.No.04-271L; and C.A.No.04-527L.

Moreover, Petitioner filed with this Court on 2-21-05 the following: [1] A Motion for an Executive Order against the R.I. Department of Corrections Maximum Security Facility's Administration (Staff), along with a supporting "Affidavit of Truth." Petitioner also filed therewith, an additional five (5) page "Affidavit of Complaint" involving allegations of "mail tampering, obstruction of correspondence, and obstruction of the administration of justice," with Exhibits "A-J", as described in the cover-letter therein, dated 2-21-05, namely, Motion for an Executive Order. [2] On 3-4-05 Petitioner filed with this Court a Motion to Adjudge the State in Contempt of Court, with an attached five (5) page "Affidavit of Complaint," alleging "harrassment, intimidation, and a continuing "corrupt endeavor" to impede, obstruct and delay Petitioner's access to the Court in violation of his due process rights. [3] Also, on 3-4-05 Petitioner filed an "Affidavit of Complaint," with it's associated "Claim of Lien" involving allegations of "Theft of money" and "Misappropriation of funds," in alleged violation of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 [12 U.S.C. §1883a]; and R.I. Gen. Laws §11-41-11.1, with a supporting "Affidavit of Complaint" with attached exhibits in support thereof. Petitioner avers that the above mentioned allegations are part of a plan, scheme and design, as well as a "corrupt endeavor" to obstruct the administration of justice, in violation of 18 U.S.C. §§1503; §1512; and §1702.

**4.** Petitioner submits that all the aforementioned filings with this Honorable United States Federal District Court, are collateral, interlocutory, and relevant subject matter in the instant Petition for Writ of Habeas Corpus, despite the fact, that Petitioner's initial "Motion for Order of Release from Unlawful Segregation," which barely scratch the surface of the Petitioner's substantive claims, would be rendered "moot," since Petitioner is no longer in segregation.

**Wherefore,** Petitioner has submitted a claim upon which relief can and should be granted. Thus, the Respondent's (State's) March 4, 2005 "Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus should be denied and dismissed. Therefore, the Petitioner requests that the Respondent's Motion to Dismiss be denied and dismissed.

**Respectfully submitted**

Normand Bedford — Normand L. Bedford

June 6, 2005

**Normand L. Bedford (Pro se)**
**P.O. Box 8273**
**Cranston, RI 02920**

**Certification**

I, the undersigned hereby, certify that I, caused a true copy of the within Objection and Rebuttal to be mailed, Inter-Departmental mail, this 9th day of **March**, 2005, to: Patricia A. Coyne-Fague Esquire, Chief Legal Counsel, R.I. Department of Corrections, 40 Howard Avenue, Cranston, RI 02920.

Normand Bedford — Normand L. Bedford

EXHIBITS TO PETITIONER'S
OBJECTION AND MEMORANDUM OF REBUTTAL
TO RESPONDENT'S MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS
C.A.NO.04-527L
DATED: MARCH 9, 2005

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **Normand Bedford** | : | |
| | : | |
| **vs.** | : | **C.A. No.: 04-527L** |
| | : | |
| **A.T. Wall, Director of the** | : | |
| **Rhode Island Department of Corrections** | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S PETITION FOR WRIT OF HABEAS CORPUS**

Now comes the Defendant, A.T. Wall, by and through his attorney, hereby respectfully requests that this Court deny and dismiss Plaintiff's Petition for Writ of Habeas Corpus, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Defendant submits that the Plaintiff has failed to state a claim upon which relief may be granted, and that therefore his petition should be dismissed.

**I. Background and Plaintiff's complaint**

The Plaintiff is a penal inmate serving a sentence at the Rhode Island Adult Correctional Institutions (ACI).

The Department of Corrections, Adult Correctional Institutions, utilizes an inmate grievance procedure which permits inmates to lodge complaints about various aspects of inmate life and seek resolutions to those complaints. The policy which delineates the procedure for the grievance system (copy attached) states that inmates may be limited from filing grievances and subject to discipline if it is determined that they have abused the grievance procedure.

In a facility of approximately 860-890 inmates[1], Plaintiff filed approximately 23% of all grievances filed in 2004. The subject matter of Plaintiff's grievances were deemed frivolous and repetitive by institutional staff. It seems that the Plaintiff files a grievance against nearly every individual with whom he comes into contact, and then continues to do so repeatedly. The grievance procedure, consisting of two levels of review, requires investigation and response on the part of institutional staff at the ACI. Grievances are answered in writing, and therefore can monopolize a significant portion of officers' time, taking them away from other correctional functions. Therefore, Plaintiff's continued filing of voluminous, repetitive and oftentimes facially meritless grievances was posing an unacceptable and unproductive burden on institutional staff. As such, Plaintiff was verbally notified on 11-22-04 that he may not use the grievance system for a period of six months[2], and that formal notification would follow in writing (which it did; see memo from Warden Whitman, dated 11-22-04, copy attached). Undaunted, Plaintiff filed a grievance later that same day.[3] The Plaintiff was then cited ("booked") pursuant to the ACI prison discipline policy, for violating the correctional officer's order. He was sentenced to serve 20 days in segregation. Plaintiff appealed that sentence and his appeal was denied. *The very next day*, 11-23-04, Plaintiff filed a grievance pertaining to the denial of an "indigent store order."[4] Plaintiff was again booked by prison staff for

---

[1] The John J. Moran Medium Security facility has a maximum capacity of 920 inmates. The average population recently has been 875-880 inmates, but has gone as low recently as 865.

[2] Although such a bar means that an inmate may not file grievances, the inmate may still write to whomever he wishes, e.g., the Warden, the Director, etc.

[3] Plaintiff's grievance complained at length that a new mattress he received was fraudulently labeled as being "new," because he alleged that the material used to stuff his mattress was not "supportive," and therefore was not "new." His grievance alleged willful violations of federal labeling and consumer laws by prison officials.

[4] Plaintiff was denied free commissary goods which are provided to indigent inmates, inasmuch as he is not considered indigent because he had refused employment (washing floors); Plaintiff argued in his 11-23-04

disobeying an order, and was sentenced to 25 days in segregation, to be served consecutively with the prior 20 day sentence.[5]

Plaintiff claims that his right to due process has been violated in that he has been sentenced by prison officials to serve 45 days in punitive segregation for violation of prison disciplinary rules; specifically, for abuse of the prison's grievance process. Plaintiff also contends that he sustained minor injury from handcuffs being applied too tightly during his transport to the segregation unit; that correctional staff "mistreat" him. Plaintiff alleges that these actions are in furtherance of a plan by prison officials to keep him from being able to conduct legal research pertinent to his criminal appeal pending in the U.S. Court of Appeals for the First Circuit.

**II. The Standard for a 12(b)(6) Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), a court must take the allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989), *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed. 2d 80 (1957). *Medeiros v. South Kingstown*, 821 F.Supp. 823, 825 (D.R.I. 1993). Rule 12(b) provides that a court shall convert a motion to dismiss for failure to state a claim into one for summary judgment if "matters outside the pleadings are presented to and not

---

grievance that he was unable to wash floors due to a "personality disorder" and "depression," although he could wash tables.

[5] Plaintiff's segregation sentence has been served. He was "booked" in January, 2005 for a disciplinary infraction unrelated to the grievance process.

excluded by the court." Fed. R. Civ. P. 12(b). *C.B. Trucking v. Waste Mgmt.*, 137 F.3d 41, 43 (1st Cir., 1998).

## III. Argument

### A. Plaintiff's due process rights have not been violated

Plaintiff has failed to state a claim upon which relief may be granted, because, simply put, a prison inmate has no right to due process in a prison discipline unless the sentence exceeds 30 days in punitive segregation or otherwise presents an "atypical and significant departure from the expected parameters of the prison sentence." *Sandin v. Conner*, 515 U.S. 472, 485. (1995). Plaintiff claims that he received a 45 day sentence to segregation, when in fact he received two separate sentences, each less than 30 days, to be served consecutively.

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law," and unless the discipline imposed represents a "dramatic departure from the basic conditions of [the inmate's] sentence," it is not protected by due process. *Sandin*, at 485. The court held that 30 days' lockup in punitive segregation does not represent a "significant departure" from the expected parameters of the inmate's sentence. *Id.* at 486. In short, Plaintiff is not entitled to due process with regard to his prison discipline. Nevertheless, Plaintiff did in fact receive notice, and an opportunity to be heard at a disciplinary hearing, as well as the right to appeal to the Warden, which Plaintiff did. Plaintiff was afforded even more process than he was due, was sentenced to less than 30 days per infraction, and therefore has failed to state a claim upon which relief may be granted.

**B. Plaintiff's complaint fails to state a claim of excessive force**

Plaintiff also contends that he sustained minor injury from handcuffs being applied too tightly during his transport to the segregation unit, and that correctional staff "mistreat" him. Plaintiff contends that an officer, not named as a defendant in this action, used "unreasonable and unnecessary force" while escorting Plaintiff to segregation. However, beyond this bare assertion, Plaintiff offers no evidence of "unreasonable and unnecessary force." It is well-established that whenever prison officials stand accused of using excessive physical force constituting "the unnecessary and wanton infliction of pain" violative of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986), that is: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. "Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that 'prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Hudson v. McMillian*, 503 U.S. 1, 4, (1992), quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). And while the Plaintiff does not have to demonstrate serious injury in order to sustain a claim of excessive force, the extent of injury is one of the factors to be considered. *Hudson* at 4. In fact, within Plaintiff's own complaint he admits that he was evaluated by a nurse, and

that the "injuries" he sustained consisted of "minor irritation." Plaintiff has not alleged a sustainable claim of unnecessary force and this claim should therefore be dismissed.

**C. <u>Plaintiff has failed to state a claim of retaliation</u>**

Plaintiff's final claim is that the prison discipline he received was in retaliation for filing grievances, and intended to impede his efforts at getting his conviction overturned. It is a fact that Plaintiff was ultimately booked because he filed grievances, because the filing of the grievances constituted disobedience to an order by correctional staff. However, such discipline can hardly be characterized as "retaliation;" otherwise <u>all</u> prison discipline would be considered "retaliation" for disobeying prison rules. Plaintiff has failed to state a retaliation claim.

Neither has Plaintiff stated a claim concerning the alleged plan by unnamed prison administrators to impede his ability to prosecute the appeal of his criminal conviction. The Plaintiff's naked allegations in this regard are insufficient to state a claim upon which relief may be granted. The Plaintiff was properly disciplined and any short-term limitation of his access to legal materials was just that: short-term, and did not affect his access to the courts.

## <u>III. Conclusion</u>

For all of the reasons contained in the within memorandum, the Defendant submits that the Plaintiff has failed to state a claim upon which relief may be granted, and respectfully requests this Court to deny and dismiss Plaintiff's Petition for Writ of

Habeas Corpus.

Respectfully submitted:

Patricia A. Coyne-Fague #5198
Chief Legal Counsel
RI Department of Corrections
40 Howard Avenue
Cranston, RI 02920
(401) 462-0145
(401) 462-2583 *fax*

**Certification**

I hereby certify that a true copy of the within document was mailed, postage pre-paid, to inmate Normand Bedford, Medium Security, P.O. Box 8274, Cranston, RI 02920 on this ____ day of March 2005.

# RHODE ISLAND DEPARTMENT OF CORRECTIONS
## POLICY AND PROCEDURE

| | | | |
|---|---|---|---|
| | POLICY NUMBER: 13.10 DOC | EFFECTIVE DATE: 05/20/96 | PAGE 1 OF 12 |
| | REPEALS: 1.20.01 | DIRECTOR: | |
| SECTION: INMATE RIGHTS | | SUBJECT: INMATE GRIEVANCE PROCEDURE | |
| REFERENCES: ACA # 3-4271 (grievance procedure) | | AUTHORITY: Rhode Island General Laws (RIGL) § 42-56-10(v), Powers of the director; C.A. No. 94-063IL (U.S. Court for the District of Rhode Island) | |

Inmate/Public Access – Yes

I. **PURPOSE**:

To provide a procedure for the resolution of those inmate complaints, problems, and grievances which cannot be resolved informally.

II. **POLICY**:

Legitimate inmate grievances should be resolved informally and at the lowest level of the chain of command. In those instances where a grievance cannot be solved on an informal basis, a structured grievance process as described herein will be used to investigate and, where appropriate, resolve the grievance.

III. **PROCEDURES**:

A. Definitions:

1. Abuse - The filing of repetitive grievances addressing the same issue where sufficient time for response has not elapsed or where a valid response has been provided; the filing of an excessive number of grievances; the appeal of a grievance settled in the inmate's favor at a lower level; the filing of harassing grievances; or the intentional filing of emergency grievances which are not emergencies; or otherwise stated herein.

b. by the inmate directly affected by the alleged incident;

c. within three (3) days of the actual situation/incident or within three (3) days of the inmate's becoming aware of same.

3. Discipline. Inmates will not be subject to disciplinary charges for utilizing the Grievance Procedure. (Exception: See Abuse of the Inmate Grievance Procedure.)

4. Assistance. All inmates in RIDOC's custody have access to the Inmate Grievance Procedure. Special provisions shall be made to ensure access for the impaired, handicapped, illiterate, or those with language barriers. Inmates may contact the Counseling staff within their facilities for needed assistance.

5. Grievable Areas of Institutional Life

a. Interpretation and application of policies, rules, and procedures of the facilities and/or Department;

b. Individual employee and/or inmate actions, including any denial of access to the Inmate Grievance Procedure, other than as provided herein;

c. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure;

d. Property loss or damage;

e. Any other matter relating to access to privileges, programs, and/or services; conditions of care or supervision; and living facility conditions within the authority of the RIDOC, except as noted herein.

6. Non-Grievable Areas of Institutional Life

a. State and Federal laws and regulations;

b. State and Federal Court decisions;

c. Formulation of Departmental policies;

d. Decisions of Discipline Boards [governed by Morris v. Travisono, 499 F. Supp. 149 (1980) and including a separate disciplinary appeal process];

e. Decisions of Classification Boards [governed by Morris v. Travisono, 499 F. Supp. 149 (1980) and reviewed by the Director or designee];

f. Designation of an inmate as a Security Risk or Protective Custody inmate (reviewed by Director or designee);

g. Decisions by qualified medical personnel related to an inmate's health;

h. Unlawful acts committed by inmate(s);

i. Matters beyond the control of the RIDOC, including decisions of the Parole Board.

7. <u>Abuse of the Inmate Grievance Procedure</u>

a. Punishment or disciplinary actions will not result from an inmate's submitting a complaint or grievance unless the inmate demonstrates a pattern of abuse of this process by submitting clearly frivolous, repetitious, or knowingly false documents.

b. An inmate who files five or more (5) grievances in a week or twenty or more (20) in any consecutive 180-day period may be determined to be abusing the Inmate Grievance Procedure.

c. An inmate may be limited to not more than ten (10) active grievances at one time, not including any emergency grievance(s).

d. Abuse of the Inmate Grievance Procedure shall be determined by the Warden of the inmate's facility.

1. A determination of abuse shall result in a limitation on the grievance process or on a particular subject.

(a) The Warden shall establish the length of limitation commensurate with the degree of abuse.

(b) The length of limitation may be for up to six (6) months and may be increased for second and subsequent abuse in increments not to exceed six (6) months.

(c) Inmates under limitation for abuse of the Inmate Grievance Procedure shall be allowed to file emergency grievances.

2. Abuse of the emergency Inmate Grievance Procedure may result in limitation of the use of the emergency Inmate Grievance Procedure, as well.

e. Notice of limitation shall be made in writing to the inmate and forwarded to the office of the Departmental Grievance Coordinator for filing.

f. A limitation of access shall be communicated to the receiving facility upon transfer of an inmate and may be reviewed and modified by the receiving facility's Warden.

g. A determination of abuse and any resulting limitation may be appealed to Level 2.

8. Terminations/Withdrawals

Inmates may terminate or withdraw grievances at any level within the procedure. This is accomplished by writing to the facility Warden or Administrator and requesting termination of the grievance. This communication will also be co-signed and dated by a Superior Officer. The Warden will notify the appropriate administrators and forward copies of the request and any other relevant material to the office of the Departmental Grievance Coordinator for filing.

C. Informal Request for Resolution of Grievance

1. Required Form - RIDOC Request Form ("pink slip").

2. Inmates must seek resolution at the lowest level of the chain of command.

3. A request form is completed by the inmate and forwarded to the appropriate individual for response/corrective action.

4. If the grievance is resolved informally to the inmate's satisfaction, no further action is required.

5. If, however, the grievance is not resolved informally (i.e., through the use of the Request Form), the inmate may utilize the formal 2-level inmate grievance procedure.

D. Formal, 2-Level Inmate Grievance Procedure

1. The following levels shall be utilized in an attempt to resolve inmate grievances:

a. Level 1 - Submitted to the Warden of the facility;

b. Level 2 - Submitted to the Director, through the Departmental Grievance Coordinator.

2. It is imperative that these levels be utilized, each one in turn, from the Warden of the facility (Level 1) to the Director of the RIDOC (Level 2), until the grievance is either resolved at any level or denied through both levels.

3. The grievance will be numbered, recorded, and returned to any inmate who attempts to omit the first level in an effort to seek redress at the next higher level. The response on the grievance will direct the inmate to use proper channels.

4. If an inmate does not receive a response within the allotted time frame at Level 1, s/he may appeal to the next level in the system. However, s/he must attach a copy of his/her goldenrod receipt from the prior level to the grievance. The Departmental Grievance Coordinator will confirm the grievant resorted to Level 1 before sending an appeal to Level 2.

5. Level 1 - Warden

a. The aggrieved inmate will obtain a Request for Resolution of Grievance form from:

(1) Any Superior Officer in his/her particular living location;

(2) The facility's Law Library.

b. Requests for Request for Resolution of Grievance forms will not be denied under any circumstances.

c. The inmate must show that s/he has attempted to resolve the grievance through the use of a Request Form (Informal Resolution Form). S/he shall:

(1) Attach a copy of the signed and completed Request Form to the Request for Resolution of Grievance form.

(2) If s/he cannot provide the signed form for any reason, s/he shall provide a written statement as to why the form is not available/attached.

d. The inmate will provide complete and accurate information which is legible on all copies of the self-carbonizing form:

(1) Circle "Level 1, Warden"

(2) Name - Last, First, Middle Initial

(3) RIDOC Inmate Identification (ID) Number

(4) Circle Facility Where Residing

(5) Grievance - in the section marked "Part A - Inmate Request"; typed or printed clearly. It should contain the name of the facility where the alleged incident occurred. It should not contain remarks which are abusive, insulting, or unrelated to the problem. (If more space is required, the inmate will attach a separate sheet, in quadruplicate.)

(6) Date

(7) Signature

e. Once the inmate has signed the Request for Resolution of Grievance form, s/he will retain the goldenrod copy for his/her personal records. The remaining three (3) copies (white, canary, and pink) will be forwarded to:

(1) <u>Emergency Grievances</u> - The level in which corrective action can be taken. The grievance must be plainly marked "EMERGENCY". It will be evaluated to determine whether it is, in fact, an emergency request. If not, it will be returned to the inmate for proper filing.

(2) <u>Non-Emergency Grievances</u> - The Warden's office. The grievance may be:

(a) given directly to a Superior Officer, Deputy Warden, or Warden;

- S/he will verify the accuracy of the date and legibly sign and date the form on all copies.
- The inmate's copy will then be returned to him/her.
- The other copies will be forwarded in accordance with this policy.

(b) sent through the mail;

(c) deposited by the inmate into a mailbox at the entrance to the facility's dining area. In the case of segregation cell- blocks or modulos, such mailboxes shall be located in the day rooms.

All mailboxes identified as drop boxes for inmate grievances will be opened at least once during each working day (Monday-Friday).

f. All grievances shall be taken to the Warden's office on the day they are received. There, they will be date-stamped, assigned a number, and entered into the running log. A copy shall be forwarded to the office of the Departmental Grievance Coordinator.

g. The Institutional Grievance Officer will conduct an investigation of the grievance and make a recommendation to the Warden. The initial investigation by the Institutional Grievance Officer shall include a personal interview with the inmate. (See Attachment 3, Investigator's Report.)

h. The Warden will have twenty (20) working days from the date on which the grievance is received in which to respond in writing to the inmate. The response will be complete and concise and entered on the Request for Resolution of Grievance form in the section marked "Part B - Response".

i. The pink copy will be returned to the inmate. The canary copy and a copy of the Investigator's Report will be forwarded to the office of the Departmental Grievance Coordinator.

j. Upon receipt of the decision from the Warden, the inmate will have five (5) days to determine whether s/he will appeal to the second level of the grievance procedure. If the grievant is satisfied with the Warden's response, the grievance procedure terminates at this point.

6. <u>Level 2 - Appeal to the Director</u>

a. If the grievance is not resolved at Level 1, the inmate will have five (5) days to complete a Level 2 grievance. At Level 2, the inmate will be afforded an outside review of his/her grievance.

b. The inmate will provide the information specified in III.F.3.b.-h. above.

c. S/he will circle "Level 2, Director".

d. The Level 2 grievance may be:

(1) given directly to a Superior Officer, Deputy Warden, or Warden;

(a) S/he will verify the accuracy of the date and legibly sign and date the form on all copies.

(b) The inmate's copy (goldenrod) will then be returned to him/her.

(c) The other copies will be forwarded to the office of the facility Warden.

(2) sent through the mail;

(3) deposited by the inmate into a mailbox at the entrance to the facility's dining area. In the case of segregation cellblocks or modules, such mailboxes shall be located in the day rooms.

(a) All mailboxes identified as drop boxes for inmate grievances will be opened at least once during each working day (Monday-Friday).

e. When Level 2 grievances are conveyed either to the Superior Officer or by placement in a locked box, they will be forwarded to the Warden using the same procedures described for Level 1.

f. The Warden will forward the grievance along with any previous responses, decisions, and investigative reports relative to the grievance to the Departmental Grievance Coordinator's secretary. S/he will follow the same procedure outlined in Level 1.

g. At the Departmental Grievance Coordinator's office, all grievance appeals and supplementary materials will be date-stamped, assigned a RIDOC grievance number, entered into a monthly log, and given to the Departmental Grievance Coordinator.

h. Upon receipt of the appeal of the previous decision, the Departmental Grievance Coordinator will conduct an investigation.

i. Based upon that investigation, the Director or designee will make a decision on the appeal within thirty (30) working days of the receipt of the complete package of materials pertaining to the

grievance. This decision will be in writing and forwarded to the inmate via the pink copy of the form. The white copy will be filed in the office of the Departmental Grievance Coordinator. The canary copy will be forwarded for filing in the inmate's file at his/her facility, along with a copy of the Investigator's Report.

7. <u>Investigator's Report</u> (Attachment 3)

a. The Investigator's Report form will be completed by either the Departmental Grievance Coordinator or any other person designated by the grievance recipient. The inmate's name and RIDOC identification number will always be included on the form.

b. It is the responsibility of the Investigator to determine the validity of the grievance in light of facts, discrepancies, disparities in disposition, and/or other pertinent information. Specifically, s/he may review any files and memoranda and interview any witnesses or persons who may be able to reveal pertinent and/or relevant information.

c. In cases where a specific unit is referred to in the complaint, the Investigator will always interview the unit manager and include his/her comments.

d. The Investigator will make conclusions based on findings and prepare a draft response which will be submitted to the person to whom the grievance is directed for his/her review.

e. The time limit for the Investigator's response is five (5) working days, exclusive of weekends and holidays.

f. <u>NOTE</u>: If the grievance pertains to a complaint against a specific member of the Rhode Island Brotherhood of Correctional Officers (RIBCO), a RIBCO representative will be immediately notified for his/her assistance in the investigation.

g. Employees or inmates who appear to be involved in a matter are prohibited from participating in any capacity in the investigation.

8. <u>Grievance Extensions</u>:

Each level of the Inmate Grievance Procedure may be extended.

a. <u>Level 1</u> - up to twenty (20) working days.

(1) The request for extension shall be answered by the Warden or designee and forwarded to the inmate within the time limits of the level.

b. Level 2 - up to twenty (20) working days.

(1) The request for extension shall be answered by the Director or designee and forwarded to the inmate within the time limits of the level.

c. Warden/Director Request for Extension:

The Warden, Director, or designee shall complete an Extension of Grievance Procedure form (Attachment 4) and forward it to the office of the Departmental Grievance Coordinator for filing.

d. Inmate Request for Extension:

The inmate must complete a Request Form (Attachment 1), commonly referred to as a "pink slip". S/he shall identify the particular grievance, request an extension not to exceed twenty (20) days, and forward the Request Form to the Departmental Grievance Coordinator.

e. Departmental Review Extension:

When the resolution of a grievance may result in Departmental or facility policy change, or the subject matter of the grievance is of a complex nature, the Director or designee may extend the grievance procedure no longer than one hundred and eighty (180) days from the filing of the Level 1 grievance.

f. Exhaustion of Extensions:

Once all extensions have been exhausted and the grievant still desires to seek further action, s/he may attempt to have the matter addressed in the Court system.

9. Grievance Log:

a. Grievance logs for the recording of grievances will be maintained in the offices of the Wardens and Departmental Grievance Coordinator.

b. Upon receipt of a grievance at either of the two (2) levels, the following information will be typed on the log:

(1) Assigned number of the grievance;

(2) Date grievance was received;

(3) Inmate's name and RIDOC identification number;

(4) Facility where inmate is housed;

(5) Subject of grievance;

(6) Decision made on prior level (including informal resolution).

c. <u>Access</u> - Grievance logs will be kept in a notebook or computer and will be readily available to officials at either of the two (2) levels and other appropriate staff with a need to know. This limitation of access is intended to minimize risks to security, protect the safety of individuals, and assure privacy interests protected by law.

10. <u>Institutional Remedies</u>

a. When a grievance is resolved in favor of the grievant, the facility Warden shall have at his/her discretion the following remedies:

(1) <u>Restitution or Monetary Compensation</u> - Monetary reimbursement will be based on the depreciated value of lost or damaged property.

(a) The grievant shall produce/ provide any receipts necessary to assist in determining the cost of lost or damaged property.

(b) It shall be the responsibility of the grievant to provide clear evidence of misconduct or negligence on the part of the RIDOC or its employees.

(2) Changes of facility policies

(3) Correction of inmate records

(4) Other remedies, as appropriate.

13.10 DOC
Attachment 1
Page 1 of 1

R.I. Dept. of Corrections

# REQUEST FORM

TO: ______________________ DATE: ____________

I RESPECTFULLY REQUEST: (STATE PROBLEM - BE SPECIFIC) ____________

INMATE NAME ______________________ I.D.# ____________

WORK ASSIGNMENT: ______________________ CELL NUMBER: ____________

H.S.C. ________ MAXIMUM ________ MEDIUM ________ MINIMUM ________

WOMENS ________ I.S.C. ________ WORK RELEASE ________

WING OR DETAIL OFFICER'S COMMENTS: ______________________

OFFICER'S SIGNATURE ______________________

**Disposition of Case**

RESPONSE: ______________________

SIGNATURE ______________ TITLE ____________ DATE ____________

NOTE: YOU WILL NOT BE CALLED IF IT IS POSSIBLE TO DISPOSE OF YOUR REQUEST PROPERLY WITHOUT AN INTERVIEW.

DISTRIBUTION:

REQUEST
WHITE - DESIGNEE
YELLOW -
PINK -
SALMON - INMATE

RESPONSE
WHITE - INMATE
YELLOW - ASSOCIATE DIRECTOR
PINK - DESIGNEE

S 10

13.10 DOC
Attachment 2
Page 1 of 1

Rhode Island Department of Corrections

REQUEST FOR RESOLUTION OF GRIEVANCE

Instructions: Type or print, using ballpoint pen. All information must be legible on all copies. If more space is needed, attach additional sheet(s)--in quadruplicate. Attach copy of previous Request Form (Informal Resolution Form).

To: (circle one) Level 1, Warden Level 2, Director

From: (name) First ____ Last ____ MI ____ RIDOC ID # ____

Facility: (circle one) ISC HSC MAX MED MIN WR WOM/JA WOM/DIX COM.CONF.

PART A - INMATE REQUEST

Facility where alleged incident occurred: ____

Grievance/Complaint: ____

Date ____ Inmate's Signature ____

Date Received ____ Staff Member's Signature ____

PART B - RESPONSE

Date Received ____

Date ____ Signature (Level 1 = Warden; Level 2 = Director)

Distribution:
Level 1: White - Warden; Canary - Dept.Griev.Coord.; Pink - Inmate; Goldenrod - Inmate
Level 2: White - Dept.Griev.Coord.; Canary - Warden; Pink - Inmate; Goldenrod - Inmate

13.10 DOC
Attachment 3
Page 1 of 2

RHODE ISLAND DEPARTMENT OF CORRECTIONS

## *INVESTIGATOR'S REPORT*

Instructions: **THIS FORM MUST BE TYPED.** This form is provided to facilitate your investigation of the inmate grievance you have been assigned. As stated in the policy, your job is to determine the validity of the grievance in light of facts, discrepancies, disparities in dispositions, and/or other pertinent information. Specifically, you will review files and memoranda and interview any witnesses or other persons who may be able to reveal relative information. In cases where a specific unit is referred to in the complaint, always interview the unit manager involved and include his/her comments. Finally, you will make conclusions based on your findings and prepare a draft response which will be submitted to the person to which the grievance is directed for his/her review. The time limit for response is five (5) working days, exclusive of weekends and holidays.

TO: ☐ WARDEN ☐ DIRECTOR ☐ OTHER ____________

**INMATE NAME:** ____________ **INMATE ID #:** ____________

**CURRENT FACILITY:** ISC HSC MAX MED MIN WR WOM/JA WOM/DIX COM.CONF.
(circle one)

**DATE RECEIVED:** ____________ **GRIEVANCE #:** ____________

**DATE OF GRIEVANCE:** ____________ **DATE OF INCIDENT:** ____________

1. Does the grievance pertain to a complaint against a specific member of the Rhode Island Brotherhood of Correctional Officers (RIBCO)? ☐ Yes ☐ No

   ***If so, you will notify a RIBCO representative immediately for his/her assistance in this investigation.***

2. What is the problem? ____________

3. Where did the problem occur? ____________

   Why did the problem occur? ____________

Witnesses and/or other parties who can provide relevant information:

Name:______________________________ Title:____________________

His/her comments relative to the grievance:______________________
_______________________________________________________________
_______________________________________________________________

Name:______________________________ Title:____________________

His/her comments relative to the grievance:______________________
_______________________________________________________________
_______________________________________________________________

***Attach additional sheet(s) if necessary.***

6. Do witnesses verify the complaint?_____________________________
_______________________________________________________________
_______________________________________________________________

7. Inmate's suggested resolution:________________________________
_______________________________________________________________
_______________________________________________________________

8. Are there any discrepancies? ☐ Yes ☐ No
If yes, enter the name(s) of witness(es) and describe discrepancy(ies):
_______________________________________________________________
_______________________________________________________________
_______________________________________________________________

9. Investigator's conclusion:____________________________________
_______________________________________________________________
_______________________________________________________________
_______________________________________________________________

10. Investigator's suggested resolution:__________________________
_______________________________________________________________
_______________________________________________________________
_______________________________________________________________

_______________________________________________________________
*Date* *Investigator's Signature and Title*

Rhode Island Department of Corrections

EXTENSION OF GRIEVANCE PROCEDURE

GRIEVANCE NO.: ____________________

INMATE NAME: ____________________

FACILITY: ____________________

NUMBER OF DAYS OF EXTENSION: ____________________

EXTENSION SUBMITTED BY: ____________________
(NAME)

____________________
(TITLE)

REASON FOR EXTENSION:

____________________

____________________

____________________

____________________

____________________

COPY FORWARDED TO: INMATE ____________________

ON ____________________.
(DATE)

____________________ ____________________
SIGNATURE TITLE

Distribution:

Level 1
original - Departmental Grievance Coordinator
copy - Inmate
copy - Facility Inmate File

Level 2
original - Departmental Grievance Coordinator
copy - inmate

# GRIEVANCE LOG

Circle: ISC HSC MAX MED MIN WR WOM/JA WOM/DIX CC DIRECTOR

| GRIEV. NO. | LEVEL | INMATE'S NAME | I.D. # | SUBJECT | GRIEV. DATE | DATE RECVD. | RESP. DATE | DISP | DATE RET. TO INMATE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Prior | |
| | | | | | | | | Current | |
| | | | | | | | | Prior | |
| | | | | | | | | Current | |
| | | | | | | | | Prior | |
| | | | | | | | | Current | |
| | | | | | | | | Prior | |
| | | | | | | | | Current | |
| | | | | | | | | Prior | |
| | | | | | | | | Current | |
| | | | | | | | | Prior | |
| | | | | | | | | Current | |

Warden's/Director's Signature Date

**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**
**INTER-DEPARTMENTAL MEMO**
**JOHN J. MORAN MEDIUM SECURITY**

Memorandum to: Inmate Norman Bedford #102384

Department: Corrections

From: Walter Whitman, Warden

Department: Medium Security

Date: November 22, 2004

Subject: **REMOVAL FROM GRIEVANCE PROCEDURE**

Based on your voluminous filings of grievances, all of which were determined to be unfounded, you are hereby removed from the grievance process for a period of six months in accordance with DOC 13.10 page 4 of 12 (7) d.

Additionally, I have instructed Lt. Flynn to initiate disciplinary action for abuse of the grievance process in accordance with DOC 13.10 page 4 of 12 (7) a.

cc: Bob McCutcheon
Deputy Kaszyk
Lt. Flynn

Doc: Bedford Norman grievance proc.WW
Disc: MTL/26

U.S. COURT OF APPEALS
FOR THE FIRST CIRCUIT
Mr. RICHARD CUSHING DONOVAN
1 COURTHOUSE WAY - SUITE 2500
BOSTON, MA, 02210

January 28, 2005

Docket numbers:
#04-2604
#04-2727

Re: NORMAND BEDFORD v. A.T. WALL, Director, RI DEPT. OF CORRECTIONS; ATTORNEY GENERAL FOR THE STATE OF RI; Motion & Memo to Stay Appeal filing.

Dear Mr. Donovan:

Please file the enclosed Motion & Memo to Stay Appeal in the above cited Docket Numbers.

Appellant reluctantly files the enclosed in light of this Court's repeated failures to answer four (4) individual requests pertaining to his Pending motions for appointment of Counsel and Motion to Proceed in Forma Pauperis, thus rendering any due Process ineffective and valueless, to this Appellant.

Sincerely
Normand Bedford
NORMAND BEDFORD
P.O. BOX 8274
CRANSTON, RI
02920

Seg 5B

UNITED STATES COURT OF APPEALS FOR THE
FIRST CIRCUIT

NORMAND BEDFORD

Docket # 04-2727
Docket # 04-2604

v.

A.T. WALL, Director, R.I. DEPT. OF CORRECTIONS;
ATTY. GENERAL FOR THE STATE OF R.I.

# APPELLANT'S MOTION AND MEMORANDUM TO STAY APPEAL

Now comes Appellant, Normand Bedford, in the above entitled matter and hereby, moves this Honorable Court to "Stay Appeal" in the above cited docket numbers, on the grounds that Appellant is being denied all forms of due process of law, essential to effectuate his appeal. Appellant's repeated requests to this Court inquiring the status of his motions to appoint counsel for appeal, and motion to proceed in Forma Pauperis on appeal have also been ignored, instead this Court continues to obtain a "procedural default" by issuing Order after Order, ignoring relevant matters, such as, claims of due process violations involving R.I. D.O.C. Officials related to his unlawful disciplinary confinement pending his transfer to Maximum Security.

Appellant submits the attached Memorandum in Support of this motion, whereby he prays that this motion be granted.

Respectfully submitted

Date: January, 2005.
DC. AKA Seg #5B

Normand Bedford
NORMAND BEDFORD
P.O. BOX 8274
CRANSTON, RI
02920-0274

## Certification

28 USC §1746

I do declare under the penalty of perjury that on this 28th day of January 2005. I hand delivered the attached Motion & Memorandum to "Stay Appeal" to "disciplinary confinement" officer for mailing to: U.S. Court of Appeals for the First Circuit, 1 Courthouse Way - Suite 2500. Boston, Ma 02210. Copy also sent to: R.I. Attorney Generals Office, Mr Aaron L. Weisman, 150 South Main Street, Providence RI 02903, postage prepaid.

Normand Bedford

UNITED STATES COURT OF APPEALS FOR
THE FIRST CIRCUIT

NORMAND BEDFORD

Docket #04-2727
Docket #04-2604

v.

A.T. WALL, Director, R.I. DEPT. OF CORRECTIONS;
ATTY. GENERAL FOR THE STATE OF R.I.

# APPELLANT'S MEMORANDUM IN SUPPORT OF MOTION TO STAY APPEAL

1. On January 20, 2005, this Court issued an Order to Appellant to either move for dismissal of Appeal No. 04-2727 pursuant to Fed. R. App. P. 42(b), or to show cause, in writing why both cases should remain open. This Court further stated that failure to take either action by February 3, 2005 may result in dismissal of Appeal No. 04-2727 for lack of diligent prosecution. See Loc. R. 3(b).

2. Appellant's Position, however, is that he has been denied many forms of due process, which, has been repeatedly reported to this Court as well as the U.S. District Court under C.A. No. 04-527L, still pending.

3. On 12/16/04 Appellant filed a "Motion for appointment of Counsel" in this Court, and despite countless requests the status of such motion is still unknown.

4. On 12/16/04 Appellant filed a "Motion to Proceed on appeal in Forma Pauperis," and despite numerous requests the status of such is unknown.

5. On 12/8/04, along with the motions above in averments 3 & 4 Appellant filed with this Court a "Certificate of Appealability" with exhibits A-H, excluding A & C, the same was filed in U.S. District Court on 12/2/04, however, this Court mysteriously denies receipt of the "Certificate of Appealability," which supports foul play. See this Court's Docket Listing on 12/22/04 as [Public Note].

6. On 12/14/04, Appellant inquired of this Court of the status on his "Motion for Counsel" and Motion to Proceed in Forma Pauperis on appeal," yet received no response.

7. On 12/19/04 Appellant filed with this Court a "Motion to Enlarge Time" along with a memorandum requesting the status of his "motion to appoint counsel" and in "Forma Pauperis motion," however, Appellant never received a response thereto. Also, Appellant set forth allegations and assertions therein, that he was being denied "full and fair access" to the Court on numerous grounds. Appellant asserts that he is still being denied his access to legal copies via D.O.C., and he is being denied legal material such as writing paper, envelopes, etc. Appellant further submits that new revelations came to light involving ongoing mail-tampering within the R.I. D.O.C. Medium Security Facility, by which he filed an "Affidavit of Complaint" with RI D.O.C. Director A.T. Wall. Again no response was provided to Appellant regarding such complaint. Appellant asserts that R.I. D.O.C. officials continue to violate Federal law, 18 USC. Sections 1503; 1512; and 1702, Claims well supported by material facts and circumstances, but the same continues to be ignored.

8. On 1/7/05, Appellant sent a three (3), Page letter to this Court certified on the date of the same. In that letter Appellant requested the status of his "motion to appoint counsel." Appellant also "informed the Court that his situation had not changed." And that he was still being denied his legal work and evidence, and was still being denied legal copies. Appellant went on to declare that he was in a "crippling situation" and under "grave emotional distress infinite," and without "appointment of counsel, due process was futile," however, this Court took no cognizance of the aforementioned and declined to either inform Appellant of the status on his Pending motion for counsel, nor appoint the same, which circumstances warranted.

9. On 1/7/05, a second (2d) letter was sent to this Court by Appellant inquiring of the status of his "Motion to Proceed in Forma Pauperis on appeal," however, again no response was sent to Appellant. He also enclosed the five (5) dollar check addressed to the Clerk

of the U.S. District Court. He also informed this Court of his previous filing of his financial statement from inmate accounts as well as his filing of Form 4.

10. On 11/12/05 Appellant filed with this Court a "Motion & Memorandum to Enlarge Time" to file a memorandum in support of "Certificate of Appealability," certified on the date of the same. That motion requested a 30-day, (thirty day) enlargement. A forth (4th) request and inquiry was made in that motion, regarding the status of both "motion to appoint counsel" and motion to proceed in Forma Pauperis on appeal. It now raises new questions as to why after four (4) inquiries that Appellant never received an answer to one (1) inquiry, instead after months of futile litigation, from segregation no less, that this Court would now divide or seperate the appeal from the denial of "Petition for Writ Habeas Corpus" Pursuant to 28 U.S.C. Section 2254, and the appeal from the denial of "Certificate of Appealability," as it now does in this Court's Order of 1/20/05.

Therefore, in light of [malicious prosecution and abuse of Process] in violation of Federal law, 42 U.S.C. Sections 1983 & Sec. 7:56; mail tampering, and obstruction of justice, 18 U.S.C. Sec. 1503; and Sec. 1702, and the denial of due process, and equal protection of the law, as previously asserted state corrective process is rendered ineffective to futility, and so, Appellant has no choice to move this Court for a "Stay of Appeal" on both docket numbers (04-2604) and (04-2727), to avoid imminent default, and pending a change in circumstances.

Wherefore, Appellant respectfully requests that the instant motion to stay appeal be granted without prejudice.

Respectfully submitted

Normand Bedford

Certification

I do declare under the penalty of perjury that on this 28th day of January 2005, I hand delivered to disciplinary confinement officer the enclosed motion & memo to stay Appeal for mailing to: RI Atty. Generals Office, Mr. Aaron L. Weisman, 150 South Main St. Prov. RI 02903, Postage Prepaid.

Normand Bedford